# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

## CASE NO. 24-14130

_____


BRANDON MUNDT,

*Plaintiff/Appellant,*

v.

ERIC ADEN, in his official capacity as
SHERIFF, OKALOOSA COUNTY, FLORIDA,

*Defendant/Appellee.*
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
HONORABLE T. KENT WETHERELL, II
(3:24-cv-82-TKW-ZCB)
_____

## APPELLANT'S INITIAL BRIEF
_____

Ashley N. Richardson
Marie A. Mattox
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
(850) 383-4800
(850) 383-4801 (facsimile)
ashley@mattoxlaw.com
marie@mattoxlaw.com

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Appellant/Plaintiff, Brandon Mundt, pursuant to FRAP 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files his Certificate of Interested Persons and Corporate Disclosure Statement:

1.   Allen, Norton & Blue, P.A. (Law Firm for Appellee)

2.   Zachary C. Bolitho (Magistrate Judge)

3.   Robert Wayne Evans (Counsel for Appellee)

4.   James Garrity (Counsel for Appellant)

5.   Benjamin Michael Lagos (Counsel for Appellee)

6.   Marie Mattox (Counsel for Appellant)

7.   Marie A. Mattox, P.A. (Law Firm for Appellant)

8.   Brandon Mundt (Appellant)

9.   Sheriff, Okaloosa County (Appellee)

10.   T. Kent Wetherell, II (District Court Judge)

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not believe that oral argument will assist the Court's disposition of this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..........................................C-2

TABLE OF CONTENTS.............................................................................i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION.........................................................iv

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE ................................................................2

STATEMENT OF THE FACTS ...............................................................2

STANDARD OF REVIEW ...................................................................12

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT ....................................................................................12

    THE DISTRICT COURT ERRED BY GRANTING SUMMARY
    JUDGMENT ON MUNDT'S DISABILITY DISCRIMINATION
    CLAIM, FINDING THAT HE DID NOT ESTABLISH A PRIMA
    FACIE CASE...............................................................................14

    A.    The District Court erred by finding that Mundt was not a
        qualified individual with a disability..................................15

    B.    The District Court erred by finding that Mundt was not denied a
        reasonable accommodation and thus the victim of
        discrimination. ..................................................................16

        1.    The Sheriff denied Mundt a reasonable accommodation. ........17

2. The Sheriff failed to engage in the interactive accommodation process. ........................................................22

CONCLUSION ............................................................................................26

CERTIFICATE OF COMPLIANCE .........................................................27

CERTIFICATE OF SERVICE ...................................................................27

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, 477 U.S. 242 (1986)...................................................13

Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999)..............................13

Clemons v. Dougherty County, 684 F.2d 1365 (11th Cir. 1982) ...........................13

Cottrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996)...............................................13

Davis v. Universal Cable Holdings, Inc., 2017 WL 5140526 (S.D.W. Va.
    Nov. 6, 2017) .........................................................................................21

Downing v. United Parcel Service, Inc., 215 F.Supp.2d 1303 (M.D. Fla 2002).....15

Duckett v. Dunlop Tire Corp., 120 F.3d 1222 (11th Cir. 1997).............................19

Earl v. Mervyns, Inc., 207 F.3d 1361 (11th Cir. 2000) ..........................................17

EEOC v. Sears Roebuck & Co., 417 F.3d 789 (7th Cir. 2005) ..............................24

Frazier-White v. Gee, 818 F.3d 1249 (11th Cir. 2016) ..........................................18

Grant v. Hosp. Auth. of Miller County, 2017 Wage & Hour Cas. 2d (BNA)
    286415 (M.D. Ga. 2017) .......................................................................22

Holly v. Clairson Indus., LLC, 492 F.3d 1247 (11th Cir. 2007) .....................16, 22

Jones v. UPS Ground Freight, 683 F.3d 1283 (11th Cir. 2012) .......................12, 14

O'Dell v. Department of Public Welfare of Pennsylvania, 346 F.Supp.2d 774
    (W.D. Pa. 2004).....................................................................................24

Ray v. Kroger Co., 2003 WL 230118292 (11th Cir. 2003)....................................15

Reed v. Heil Co., 206 F.3d 1055 (11th Cir. 2000)..................................................15

Richardson v. Honda Mfg. of Alabama, LLC, 635 F.Supp.2d 1261 (N.D. Ala. 2009) ................................................................................17

Santandreu v. Miami-Dade Cnty., 2011 WL 13136161 (S.D. Fla. Aug. 1, 2011), aff'd, 513 Fed. Appx. 902 (11th Cir. 2013)........................20

Saulter v. Corizon Health, Inc., 2018 WL 11491441 (N.D. Fla. Mar. 26, 2018) ..........................................................................19, 20

Smith v. Lockheed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011)........................14

Talavera v. School Board of Palm Beach Co., 129 F. 3d 1214 (11th Cir. 1997)....14

Taylor v. Phoenixville School District, 184 F.3d 296 (3d Cir. 1999) ....................25

Terrell v. USAir, 132 F. 3d 621 (11th Cir. 1998) ....................................................14

Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)............................16

Tippens v. Celotex, 805 F.2d 949 (11th Cir. 1986) ................................................12

U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002) ...............................................18

Velente-Hook v. E. Plumas Health Care, 368 F.Supp.2d 1084 (E.D. Cal. 2005)...24

Walker v. NF Chipola, LLC, 2016 WL 1714871 (N.D. Fla. Mar. 28, 2016)..........20

Webb v. Donley, 347 Fed.Appx. 443 (11th Circ. 2009) .........................................22

Willis v. Conopco, Inc., 108 F.3d 282 (11th Cir. 1997)..........................................18

Wood v. Green, 323 F.3d 1309 (11th Cir. 2003).............................................18, 19

**Statutes**

28 U.S.C. § 1291 .....................................................................................................iv

29 U.S.C §§ 2612, 2624..........................................................................................2

42 U.S.C. § 12101, et seq..................................................................................2

42 U.S.C. § 12111(8) ....................................................................................15

29 C.F.R.1630.2(o)(iii) .................................................................................24

29 CFR 1630.9 .............................................................................................18

Chapter 760, Fla. Stat.................................................................................2, 12

## Rules

Fed. R. Civ. P. 56 .........................................................................................13

## STATEMENT OF JURISDICTION

This case is a plenary appeal of a final decision of a district court of the United States, specifically, the United States District Court for the Northern District of Florida, Panama City Division. Accordingly, jurisdiction lies under 28 U.S.C. § 1291. Appellant timely filed his Notice of Appeal on December 18, 2024 [Doc. 25], following entry of the District Court's Orders Granting the Motion for Summary Judgment, and the Final Judgment entered on November 25, 2024. [Docs. 22, 23].

# STATEMENT OF THE ISSUES

I.   Whether the District Court erred by finding that Mundt did not establish a *prima facie* case of disability discrimination.

II.  Whether the District Court erred by finding that Mundt was not a qualified individual with a disability.

III. Whether the District Court erred by finding that the Sheriff did not deny Mundt a reasonable accommodation.

IV.  Whether the District Court erred by failing to analyze whether the Sheriff engaged in the required interactive accommodation process.

V.   Whether the District Court erred by relying on evidence of Mundt's medical condition after his termination.

VI.  Whether the District Court improperly weighed the evidence or viewed the evidence in a light most favorable to Appellee.

VII. Whether the District Court erred by finding that there were no material facts in dispute precluding the entry of summary judgment.

## STATEMENT OF THE CASE

Plaintiff/Appellant, Brandon Mundt, filed his initial Complaint below in the First Judicial Circuit in and for Okaloosa County, Florida, on December 27, 2024. [Doc. 1]. In his Complaint, Mundt set forth causes of action for disability discrimination under 42 U.S.C. § 12101 et seq., and a violation of the Family and Medical Leave Act ("FMLA") of 1993, under 29 U.S.C §§ 2612, 2624, as well as retaliation under Chapter 760, Fla. Stat. [Id.]. Defendant/Appellee, Eric Aden, in his official capacity as Sheriff, Okaloosa County, Florida, removed the action to the United States District Court for the Northern District of Florida, Pensacola Division, on February 22, 2024. [Doc. 1].

The Sheriff filed a Motion for Summary Judgment on September 16, 2024. [Doc. 13]. Mundt responded in opposition on October 14, 2024. [Doc. 20]. Appellee filed a Reply on October 10, 2023. [Doc. 21]. The District Court granted summary judgment on November 25, 2024 [Doc. 22], and Mundt then timely appealed. [Doc. 25].

## STATEMENT OF THE FACTS

Mundt began his employment with the Sheriff's Office as a Patrol Deputy in 2012. [Doc. 19-1, ¶1-2; Doc. 19-2, p. 42-43]. During his original employment with the Sheriff's Office, in 2015, Mundt was involved in an on-duty vehicle accident. [Doc. 19-1, ¶3; Doc. 19-2, p. 44; Doc. 19-3]. After the accident, Mundt sought

medical treatment, but when x-rays did not show that he suffered any broken bones, Mundt immediately returned to work. [Doc. 19-1, ¶4; Doc. 19-2, p. 44-47; Doc. 19-3; Doc. 19-4].

Mundt thereafter Mundt resigned from his position with on July 11, 2016, because his family relocated. [Doc. 19-1, ¶5; Doc. 19-2, p. 50; Doc. 19-5]. When Mundt and his family moved back to Florida, Mundt reapplied for a Patrol Deputy position, and he was rehired on March 12, 2019. [Doc. 19-1, ¶6; Doc. 19-2, p. 51-52; Doc. 19-6]. Mundt was then promoted to Investigator in the Homeland Security Division on June 19, 2021. [Doc. 19-1, ¶7; Doc. 19-2, p. 54-59; Doc. 19-7]. Mundt thereafter transferred to the Sheriff's General Investigations Division on June 1, 2022. [Doc. 19-1, ¶8; Doc. 19-2, p. 54-59; Doc. 19-8]. When he accepted the transfer, Mundt's supervisor advised that he would gain a wider amount of experience in the General Investigations Division, positively affecting Mundt's career. [Id.].

Mundt's work history with the Sheriff's Office was very positive, and he did not receive any formal discipline during either period of employment. [Doc. 19-1, ¶9; Doc. 19-2, p. 49, 54; Doc. 19-9]. He also received Life Saving Awards in 2015, 2016, and 2019, and was awarded Deputy of the Year in 2020. [Doc. 19-1, ¶10; Doc. 19-10].

As an Investigator, Mundt was assigned cases primarily in the Internet Crimes against Children Unit. [Doc. 19-1, ¶11; Doc. 19-2, p. 54-55]. He investigated or assisted in investigating, prepared reports, and investigated violations of risk protection orders. [Id.]. Many of Mundt's duties as Investigator involved computer work and could be completed at a desk. [Doc. 19-1, ¶12].

After Mundt transferred to the General Investigations division in June 2022, he began to experience severe pain in his back and had difficulty moving around. [Doc. 19-1, ¶13; Doc. 19-2, p. 64-65; Doc. 19-11]. Mundt then sought medical treatment, and x-rays showed trauma to his spine. [Doc. 19-1, ¶14; Doc. 19-2, p. 64-65; Doc. 19-11]. Mundt received a return-to-work note from his doctor which restricted Mundt from climbing, balancing, or dragging. [Doc. 19-1, ¶15; Doc. 19-2, p. 66-69; Doc. 19-12]. Mundt was also referred to a surgeon for surgical repair of his spine. [Doc. 19-1, ¶17; Doc. 19-11].

Mundt immediately notified his supervisors, including Sergeant Dan Genrich, Lieutenant Michael Smith, and Captain Matt Abbott, of his medical condition and his doctor's order restricting him from specific tasks. [Doc. 19-1, ¶16; Doc. 19-2, p. 65-70; Doc. 19-12]. Initially, Mundt's supervisors informed Mundt that the restrictions were essentially "no big deal" and that Mundt should continue to seek treatment and follow his doctor's orders. [Doc. 19-1, ¶18; Doc. 19-2, p. 65-66].

While Mundt's doctor did not restrict him from all work tasks, The Sheriff's Office ordered Mundt to take leave while he was under any medical restrictions and told Mundt he could not return until his doctor fully cleared him to return to work. [Doc. 19-1, ¶19; Doc. 19-2, p. 72-75, 89-92]. Mundt believed he was taking advanced medical leave because he had exhausted his accrued medical leave, but Mundt later learned that the Sheriff categorized his leave as Family and Medical Leave Act ("FMLA") leave. [Doc. 19-1, ¶20; Doc. 19-2, p. 72-73, 77, 82-85; Doc. 19-13; Doc. 19-14; Doc. 19-15]. On July 13, 2022, Mundt's doctor cleared him to return to work without any restrictions. [Doc. 19-1, ¶21; Doc. 19-2, p. 87-88; Doc. 19-16].

Dr. Brandon Cook initially saw Mundt on October 27, 2022, and he discussed performing surgery on Mundt's back. [Doc. 19-1, ¶22; Doc. 19-11, p. 35-36]. After reviewing Mundt's MRI, Dr. Cook recommended an L4-5 laminectomy on October 28, 2022. [Doc. 19-11, p. 33-34]. Mundt's surgery was scheduled for December 1, 2022. [Doc. 19-1, ¶24; Doc. 19-2, p. 95].

Mundt immediately informed his supervisors, including Sgt. Genrich, Lt. Smith, and Risk Analyst Doris James, of the scheduled surgery. [Doc. 19-1, ¶24; Doc. 19-2, p. 95]. Mundt also spoke with the Sheriff and Undersheriff Nix about the surgery and expressed his concern over his job, but the Sheriff reassured Mundt that his job was safe. [Doc. 19-1, ¶25; Doc. 19-2, p. 95-98].

Mundt applied for and was approved for FMLA leave from December 1, 2022 until January 28, 2023, the date on which the Sheriff determined that Mundt had exhausted available leave under the FMLA because Mundt was forced to take leave earlier in the year. [Doc. 19-1, ¶26; Doc. 19-2, p. 106; Doc. 19-17].

After providing James with the surgery date, she told Mundt that his job was secure for 180 days. [Doc. 19-1, ¶27; Doc. 19-2, p. 115-117; Doc. 19-18]. Major Shannon Tait also told Mundt that he had 180 days before he would be forced to resign or face termination. [Doc. 19-1, ¶28; Doc. 19-19, p. 6]. When Mundt asked Sgt. Genrich about his return post-surgery, Sgt. Genrich assured Mundt that he could return on a light duty assignment. [Doc. 19-1, ¶30; Doc. 19-2, p. 102]. Moreover, after scheduling his surgery, Major Tait asked Mundt why he had not signed up for the upcoming Sergeant exam, and Mundt informed her that he would take the exam at some point after his surgery. [Doc. 19-1, ¶29; Doc. 19-2, p. 101-102].

Mundt's surgery went forward as planned on December 1, 2022. [Doc. 19-1, ¶31; Doc. 19-2, p. 103-104; Doc. 19-11]. On December 8, 2022, Cali Wilson, Dr. Cook's Physician's Assistant, examined Mundt, and Wilson determined that Mundt's wound site had some drainage, thus she recommended an additional surgery to clear the infection. [Doc. 19-11, p. 29-32]. Mundt underwent the additional surgery on December 14, 2022. [Doc. 19-1, ¶33; Doc. 19-2, p. 105; Doc. 19-11].

While Mundt was out on medical leave recovering from his surgery, Mundt regularly monitored his cases by computer. [Doc. 19-1, ¶48; Doc. 19-2, p. 119-120]. Sergeant Genrich reassigned some cases as per standard procedure. [Doc. 19-40].

On January 5, 2023, Wilson again evaluated Mundt, who reported to Wilson that he was doing better. [Doc. 19-1, ¶34; Doc. 19-2, p. 105-106; Doc. 19-11, p. 20-21]. Wilson noted that Mundt's expected return-to-work date was March 14, 2023. [Id.]. Once Mundt received the return-to-work date, he immediately called his supervisors, including Sgt. Genrich, and provided the information. [Doc. 19-1, ¶35].

On February 8, 2023, James emailed Mundt requesting an updated Work Status Report from his doctor which Mundt immediately provided to the Sheriff's Office. [Doc. 19-1, ¶36; Doc. 19-2, p. 127-130; Doc. 19-20; Doc. 19-21; Doc. 19-22]. On the form, Wilson stated that Mundt's return-to-work date was March 14, 2022. [Id.].

After Mundt submitted his Work Status Report on February 8, 2023, James emailed Sgt. Genrich to inform him that Mundt's FMLA was exhausted, and Mundt would have to request an extension of leave, as well as submit an updated Work Status Report. [Doc. 19-1, ¶37; Doc. 19-2, p. 130-134; Doc. 19-23; Doc. 19-24; Doc. 19-25]. Sgt. Genrich forwarded the instructions to Mundt, and Mundt made a formal request to the Undersheriff for an extension of his leave until March 14, 2023 on February 8, 2023. [Id.].

Not satisfied with the Work Status Report Mundt submitted on February 8, 2023, James sent a letter to Dr. Cook's office asking for clarification of the form on February 9, 2023. [Doc. 19-26]. James also attached Mundt's job description and physical abilities requirements to the letter. [Id.]. Dr. Cook repeated that Mundt's return-to-work date was March 14, 2023. [Id.].

On February 13, 2023, James contacted Captain Abbott and asked that he communicate to Mundt that she required Dr. Cook's office to give a definitive return-to-work date of March 14, 2023. [Doc. 19-27]. If the doctor was unable to provide a definitive date, then Mundt would be required to resign and apply for a non-sworn position in Dispatch, but Mundt had to complete the application no later than February 17, 2023, almost a  month before Mundt's return-to-work date which had been provided multiple times. [Id.].

On February 14, 2023, Major Tait emailed James that Mundt had to return *before* the date given by his doctor, in fact, before March, or he would be forced to resign, and James agreed. [Doc. 19-28]. Thus, on February 16, 2023, Major Tait and Captain Abbott called Mundt to inform him that he had to return to work by March 14, 2023, voluntarily resign, or be terminated. [Doc. 19-1, ¶38; Doc. 19-2, p. 139-142]. Thereafter, Major Tait placed a second telephone call to Mundt in which she informed Mundt that he had to resign and apply for a nonsworn position or face termination by March 20, 2023. [Doc. 19-1, ¶39; Doc. 19-2, p. 139-142]. When

Mundt asked why the change in dates, Major Tait refused to explain the change. [Id.].

On February 16, 2023, Wilson again saw Mundt for a routine post-surgery follow-up, during which Mundt reported that his legs were "giving out on him," which Mundt clarified meant that occasionally his legs would bend. [Doc. 19-1, ¶40; Doc. 19-11, p. 18-19]. Mundt also reported to Wilson that he was doing much better. [Id.]. Once again, Wilson indicated that Mundt could return to work on March 14, 2023, and once again, Mundt relayed that information to The Sheriff. [Doc. 19-1, ¶41; Doc. 19-2, p. 135-137; Doc. 19-29].

On February 17, 2023, Mundt then sent a written request requesting an explanation as to why he was being forced to resign or face termination on February 20, 2023, and why there was no response as to his request for an extension of leave until March 14, 2023. [Doc. 19-1, ¶42; Doc. 19-2, p. 141-143; Doc. 19-30]. Major Tait responded was that Mundt was "out of time." [id.]. Critically, the non-sworn position in Dispatch for which Major Tait insisted Mundt apply was a demotion for Mundt, and Mundt determined that it was not in his best interest to voluntarily accept the demotion. [Doc. 19-1, ¶43; Doc. 19-2, p. 143].

On February 18, 2023, Mundt again requested accommodation in the form of a leave extension until March 14, 2023. [Doc. 19-1, ¶44; Doc. 19-31]. Major Tait forwarded Mundt's request to Undersheriff Nix and Captain Abbott on February 18,

2023, and Undersheriff Nix forwarded the request to legal. [Doc. 19-32]. Legal determined that because Dr. Cook said Mundt was "likely" to return on March 14, 2023, that the qualification was not specific enough to grant the extension, despite the fact that March 14, 2023 had not changed once since January 5, 2023. [Doc. 19-33]. On February 19, 2023, Undersheriff Nix informed Major Tait via email that Mundt's request for accommodation until March 14, 2023 was denied. [Doc. 19-32].

At 7:20 a.m. on February 20, 2023, Major Tait emailed Mundt that his request was researched but that his options remained the same, resign or face termination, and that Mundt had to provide an answer by 10:00 a.m. [Doc. 19-34].

On February 22, 2023, Mundt received correspondence from the Sheriff indicating that he had resigned on February 20, 2023. [Doc. 19-1, ¶46; Doc. 19-35]. Mundt immediately contacted the Sheriff and stated that he did not resign. [Id.]. The Sheriff's HR Manager, Rashanna Prescott, informed Mundt that he would need to email his request that his separation from the Sheriff be classified as "termination" rather than "resignation," and pursuant to Prescott's instructions, Mundt sent the email on February 22, 2023. [Doc. 19-1, ¶47; Doc. 19-35; Doc. 19-36].

On February 23, 2023, Major Tait sent an email to the Sheriff, Undersheriff Nix, and Legal, stating that the Sheriff had already made a selection to fill Mundt's position. [Doc. 19-37; Doc. 19-38; Doc. 19-39].

When Mundt met with Wilson on March 7, 2023, he was still experiencing some minor intermittent pain which he reported to Wilson; however, the pain Mundt was experiencing was not debilitating and would not have prevented Mundt from performing all job duties required of his as an Investigator for the Sheriff. [Doc. 19-1, ¶50]. Thus Wilson cleared him to return to work without restrictions. [Doc. 19-1, ¶49; Doc. 19-2, p. 22-24; Doc. 19-11, p. 16-17].

Significantly, during Mundt's follow up appointments with Dr. Cook's office, Mundt did not see Dr. Cook, but only saw his PA, Wilson. [Doc. 19-1, ¶51]. Dr. Cook was not present in the exam room with Wilson and was not a part of any conversation Mundt had with Wilson. [Id.].

A coworker, Wesley Barnhill, had a similar surgery and was granted more leave than that extended to Mundt, including leave for one month prior to his surgery. [Doc. 19-1, ¶52; Doc. 19-2, p. 156; Doc. 19-41]. According to the Work Status Report, Barnhill was not cleared to return to work until November 15, 2023. [Doc. 19-41].

In addition, Jennifer Vitale suffered an off-duty accident, which she personally informed Mundt, and she was not forced to resign or face termination until she exhausted 180 days of leave. [Doc. 19-1, ¶53; Doc. 19-2, p. 154-155; Doc. 19-42].

## STANDARD OF REVIEW

The standard of review of an entry of summary judgment is de novo. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1291 (11th Cir. 2012).

## SUMMARY OF ARGUMENT

The District Court erred by finding that Mundt was unable to establish a *prima facie* case of disability discrimination[1]. The court further erred by determining that Mundt failed to establish that he was a qualified individual with a disability. The court also erred by determining that he was not denied a reasonable accommodation, and failing to analyze whether the Sheriff engaged in the interactive accommodation process. Moreover, the District Court erred by relying on medical notes and documentation prepared months *after* Mundt's termination as evidence that he was not qualified. As shown herein, these findings were error, as was the District Court's orders granting summary judgment. This Court should thus reverse the order and remand for further proceedings.

## ARGUMENT

"Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." Tippens v. Celotex,

---

[1] Mundt also brought claims for retaliation pursuant to Chapter 760, Fla. Stat., and Family and Medical Leave Act retaliation, neither of which he is pursuing on appeal.

805 F.2d 949, 952-53 (11th Cir. 1986). Summary judgment is proper only when "the movant shows that there is no genuine dispute as to any material fact ***and*** the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). Genuine issues of fact are those where the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

In deciding whether a genuine issue of material fact exists, courts must accept the truth of an appellant's allegations and evidence and "must draw all reasonable inferences in [an a]ppellant's favor." Cottrell v. Caldwell, 85 F.3d 1480, 1486 n.3 (11th Cir. 1996).

To withstand a summary judgment motion, the non-moving party must establish that based on the evidence in the record there can be more than one reasonable conclusion as to the proper verdict. Anderson, 477 U.S. at 250. This Court has further explained that in assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (quoting Clemons v. Dougherty County, 684 F.2d 1365, 1368-69 (11th Cir. 1982) (citations omitted). In ruling on a motion for summary judgment, the court "may not weigh conflicting evidence or make credibility determinations of [its] own. If the record presents disputed issues of fact,

the court may not decide them; rather, [it] must deny the motion and proceed to trial." Jones, 683 F.3d at 1292 (citations omitted).

Moreover, in the employment law context, a plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent. Smith v. Lockheed-Martin Corporation, 644 F.3d 1321, 1328 (11th Cir. 2011). Here, the District Court found that Mundt did not proffer sufficient evidence to establish a *prima facie* case of disability discrimination. As shown below, the District Court erred, and summary judgment is due to be reversed.

**THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT ON MUNDT'S DISABILITY DISCRIMINATION CLAIM, FINDING THAT HE DID NOT ESTABLISH A PRIMA FACIE CASE.**

The Americans with Disabilities Act prohibits employers from engaging in discrimination against an otherwise qualified individual with a disability because of the disability in regard to employment decisions, including termination. See 42 U.S.C. §12112(a). To establish a *prima facie* case of disability discrimination, Mundt must show that (1) he has a disability; (2) he is a qualified individual with a disability; and (3) he was unlawfully subjected to discrimination based on his disability. See Terrell v. USAir, 132 F. 3d 621, 624 (11th Cir. 1998); see also Talavera v. School Board of Palm Beach Co., 129 F. 3d 1214, 1217 (11th Cir. 1997). Below, the District Court found that Mundt was not a qualified individual [Doc. 22,

pgs. 12-13], and that the Sheriff did not discriminate against him by refusing to provide him with a reasonable accommodation. [Doc. 22, pgs. 14-15]. As shown below, the court erred.

### A. The District Court erred by finding that Mundt was not a qualified individual with a disability

Pursuant to the ADAAA, a "qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff must establish that he is a qualified individual under a two-prong test: (1) he has the prerequisites for the job; (2) he can perform the "essential functions" of the job with, or without, reasonable accommodation. See Reed v. Heil Co., 206 F.3d 1055, 1062 (11th Cir. 2000); see also Downing v. United Parcel Service, Inc., 215 F.Supp.2d 1303, 1309-10 (M.D. Fla 2002). An essential function is the reason why the position exists or one actually required in performing the job. See Ray v. Kroger Co., 2003 WL 230118292, at *3 (11th Cir. 2003). An employer's judgment and written description of duties are taken into consideration, but the determination of what is an essential function is a factual query. See Downing, 215 F.Supp.2d at 1310; Ray, 2003 WL 230118292at *3. The Eleventh Circuit reiterated the necessity of examining the actual duties with regards to the claimed essential functions – that if all employers were granted complete deference to claimed essential functions, they could easily escape the mandates of providing reasonable accommodations to their

disabled employees. <u>Holly v. Clairson Indus., LLC</u>, 492 F.3d 1247, 1285 (11th Cir. 2007)). In the end, where there remains conflicting record evidence, whether a certain duty is an essential function should be a fact issue resolved by a jury. <u>Id.</u>

Here, as shown below, the record establishes that Mundt required leave until March 14, 2023, at which point Wilson reported he would be able to return to his full duties, and this undergo the PAT. There is no evidence to "blatantly contradict" Wilson's medical notes. [Doc. 22, pg. 13, citing <u>Schultz v. Am. Airlines, Inc.</u>, 449 F. Supp. 3d 1301, 1311 (S.D. Fla. 2020)]. Dr. Cook did not see Mundt during any of his follow up visits, and did not prepare the return-to-work notes. Instead of extending Mundt's leave by three weeks to accommodate his disability, he was instead terminated. While Dr. Cook testified that Mundt may not have been ready for the PAT, there is no dispute that Wilson released him to his full duties as of March 14, 2023, and he was never given the opportunity to undergo the PAT. Given that Mundt's burden at this stage is "not onerous," the District Court erred by relying on medical records that did not exist at the time of Mundt's termination and ultimately concluding that he was not a qualified individual. <u>Texas Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981).

**B.    The District Court erred by finding that Mundt was not denied a reasonable accommodation and thus the victim of discrimination.**

Below, the District Court held that Mundt was not denied a reasonable accommodation. While this was error, the Court further erred by failing to analyze

and rule on whether the Sheriff failed to engage in the interactive accommodation process. As set forth herein, this Court should reverse the District Court's order granting summary judgment.

### 1. The Sheriff denied Mundt a reasonable accommodation.

To establish a claim of failure to reasonably accommodate a disability, a plaintiff must prove: (1) he has a disability within the meaning of the statute; (2) defendant had notice of his disability; (3) with a reasonable accommodation he could perform the essential functions of his position; and (4) the defendant refused to make such accommodations. Richardson v. Honda Mfg. of Alabama, LLC, 635 F.Supp.2d 1261, 1279 (N.D. Ala. 2009). There is no dispute that Mundt was disabled and that the Sheriff was on notice of his disability.

Mundt was able to perform the essential functions of his position with a reasonable accommodation. Accommodations are reasonable if they permit the plaintiff to perform his essential job functions. See Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). As discussed above, Mundt could perform the essential functions of his job with the accommodation of a limited period of unpaid leave. However, his supervisors refused to grant Plaintiff the leave he requested until March 14, 2023, and instead, the Sheriff fired Mundt on February 20, 2023.

There is similarly no dispute that the Sheriff refused Mundt's request for a reasonable accommodation and did not extend his leave by three weeks in accordance with Wilson's medical documentation. While the analysis should end

there, the District Court held that the requested accommodation was not reasonable "since it would not have enabled Plaintiff to perform the essential functions of his job." [Doc. 22, pgs. 14-15]. Respectfully, the District Court got it wrong.

The employer bears the burden of establishing that the employee's accommodations would impose an undue hardship on its operations. 29 CFR 1630.9; see also, Willis v. Conopco, Inc., 108 F.3d 282, 286 (11th Cir. 1997) (once the plaintiff establishes the requested accommodation as reasonable, the defendant has a duty to show that the accommodation posed an undue burden on its operation.); U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401-02 (2002) (after the complainant has shown the accommodation is reasonable on its face, the burden shifts to the employer to provide specific evidence establishing the accommodation would cause an undue hardship under the particular circumstances). Below, the Sheriff argued that it was an undue hardship to grant Mundt the additional leave because the Sheriff claims the leave Mundt requested was "indefinite."

In making the argument that Mundt's request was for an undetermined amount of time, despite the repeated documentation stating that he would return to work on March 14, 2023, the Sheriff relied upon Frazier-White v. Gee, 818 F.3d 1249 (11th Cir. 2016) and Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003). While it is true that this Court determined in both Gee and Wood that an indefinite period of leave was not a reasonable accommodation, neither plaintiff in either case provided

a specific date on which they were expected to return. In fact, in <u>Gee</u>, the plaintiff informed the defendant that she "could not estimate when she would be able to return to full duty." <u>Gee</u>, 818 F.3d at 1253.

The Sheriff claimed - and it appears the Court agreed - that because Mundt's physician used "likely" and/or "tentatively" when provided a return-to-work date that the date was indefinite. However, in <u>Wood</u>, the Eleventh Circuit cited its decision in <u>Duckett v. Dunlop Tire Corp.</u>, 120 F.3d 1222 (11th Cir. 1997), stating that the employee's:

> need for leave would have been for an indefinite period—not just a month or two. Put differently, [p]laintiff could not represent that he **likely** would have been able to work within a month or two ... and had no way of knowing when his doctor would allow him to return to work in any capacity.

<u>Id.</u> at 1226 (emphasis added). Moreover, an employer does not violate the ADA by "refusing to grant [an employee] a period of time in which to cure his disabilities **where the employee sets no temporal limit** on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions." <u>Id.</u> (citation and internal quotation marks omitted) (emphasis added). <u>See Wood</u>, 323 F.3d at 1312-1313.

The Eleventh Circuit has determined that extensions of leave longer than what Mundt requested are not unreasonable. "Although the Eleventh Circuit has yet to define what 'reasonable' means in terms of a leave of absence, it has suggested that

a finite request for one or two months of additional leave may be reasonable." <u>Saulter</u> <u>v. Corizon Health, Inc.</u>, 2018 WL 11491441, at *7 (N.D. Fla. Mar. 26, 2018). "A leave of absence and leave extensions are reasonable accommodations in some circumstances. Whether the leave request is reasonable turns on the facts of the case. To be reasonable, the leave request must be temporary and for a set duration; it cannot be indefinite or open-ended." <u>Santandreu v. Miami-Dade Cnty.</u>, 2011 WL 13136161, at *9 (S.D. Fla. Aug. 1, 2011), <u>aff'd,</u> 513 Fed. Appx. 902 (11th Cir. 2013) (internal citations omitted) (holding that an employee, who had already had more than a year-long leave of absence, could request an extension of that leave for eleven more weeks, and the requested accommodation was not necessarily unreasonable); <u>see</u> <u>also</u> <u>Walker v. NF Chipola, LLC</u>, 2016 WL 1714871, at *3 (N.D. Fla. Mar. 28, 2016) (a jury had to determine whether a request for an extension of three months, after exhausting 12-weeks of FMLA leave, was a reasonable accommodation); <u>Saulter</u>, 2018 WL 11491441 at *7 (N.D. Fla. Mar. 26, 2018) (a jury could determine that five additional weeks of leave after exhaustion of FMLA leave was a reasonable accommodation).

Mundt provided the Sheriff with a clear and defined period of time and a specific return to work date of March 14, 2023. He provided that date to the Sheriff multiple times, and despite the Sheriff's repeated request for update, Mundt's return date never changed.

What was known below is that the Sheriff's employees engaged in all manner of contortion to terminate Mundt on February 20, 2023. Doris James, who is not a medical professional, interpreted the language "likely" as if it meant "unable." In fact, courts have granted summary judgment specifically because medical notes lacked this exact language. See Davis v. Universal Cable Holdings, Inc., 2017 WL 5140526, at *7 (S.D.W. Va. Nov. 6, 2017). Doctors are not clairvoyant, nor are they guarantors of physical performance. The law does not require them to be. The ADA only requires a doctor to provide a reasonably specific return date, which Wilson did. Repeatedly.

Medical professionals provide their best medical judgment at the time they are requested to do so. They do not speak in absolutes, as the human body does not operate under such parameters. However, Mundt's physicians consistently stated that he could return to his full duties on March 14, 2023. Instead of allowing Mundt three additional weeks of leave, the Sheriff instead suggested that he return and apply for a unguaranteed demotion. When Mundt stood his ground and requested to engage in the accommodation process, he was terminated.

The District Court instead agreed with the Sheriff, and viewed the evidence available at the time of Mundt's termination in a light most favorable to the Sheriff. Moreover, the District Court also relied on medical documentation that *did not* exist at the time of his termination to conclude that his leave would be indefinite or he

would be unable to undergo the PAT. Mundt disputed those facts, including that his physician released him to full duty as of March 14, 2023. Nothing in the record at that time contradicted Mundt's proffer. The Sheriff acted on pure speculation and outright ignored the return-to-work notes.

The Sheriff is liable for discrimination by failing to reasonably accommodate Plaintiff's disability and that is the end of the inquiry – there is no pretext analysis. See Holly, 492 F.3d at 1262-63 (holding failure to provide accommodation is itself unlawful discrimination); see also Grant v. Hosp. Auth. of Miller County, 2017 Wage & Hour Cas. 2d (BNA) 286415 (M.D. Ga. 2017) (unpaid leave for an emergency procedure was a reasonable accommodation for Plaintiff even after FMLA leave was exhausted); Walker, 2016 WL 1714871, at *3 (N.D. Fla. Mar. 28, 2016) (three months of unpaid leave after FMLA leave was exhausted was reasonable accommodation). The District Court erred by finding that Mundt was unable to perform his job duties with a reasonable accommodation, and the order granting summary judgment is due to be reversed.

## 2. The Sheriff failed to engage in the interactive accommodation process.

The District Court did not directly address the issue of the Sheriff's failure to engage in the interactive process, noting that "if the employee does not identify a reasonable accommodation, the employer does not have to enter into an interactive dialogue or show undue hardship." [Doc. 22, pg. 15, n. 5, citing Webb v. Donley,

347 Fed.Appx. 443, 446 (11th Cir. 2009)]. Here, however, there is no dispute that Mundt requested approximately three weeks of additional leave time to accommodate his disability and comply with Wilson's instructions that he return to work on or about March 7 and thereafter undergo the PAT.

The District Court found that Mundt "was repeatedly offered the reasonable accommodation of being reassigned to a non-sworn position until he was able to complete the PAT" and thus no reasonable jury could find that the Sheriff failed to engage in the interactive process. [Doc. 22, pg. 15, n. 5]. This opinion misstates the facts, however, as Mundt was only offered the chance to apply for such a non-sworn position. Moreover, it overlooks that Mundt's requested accommodation was a few additional weeks of leave, well within the 180-days his supervisors assured him he would receive. However, this conclusion views the facts in a light most favorable to the Sheriff and relies on evidence and medical records that came into existence months after Mundt's termination.

Pursuant to the ADA, an employer is obligated to initiate or engage in the interactive process to identify limitations and potential accommodations once the need for such accommodations is made known:

> To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the

> disability and potential reasonable accommodations that
> could overcome those limitations.

29 C.F.R.1630.2(o)(iii).

This rule is the corollary to the "reasonable accommodation requirement –
that is, it creates the employer's obligation to engage in an interactive process" with
the disabled employee to determine whether and which reasonable accommodations
are feasible. See EEOC v. Sears Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005)
("the ADA requires that employer and employee engage in an interactive process to
determine the reasonable accommodation"); Velente-Hook v. E. Plumas Health
Care, 368 F.Supp.2d 1084, 1097 (E.D. Cal. 2005) (similar). Simply put, once an
employer becomes aware of the need for a reasonable accommodation, it "must
make a reasonable effort to determine the appropriate accommodation. The
appropriate accommodation is best determined through a flexible, interactive
process that involves both the employer and the [employee] with a disability." 29
C.F.R. §1630.2(o)(iii). "Underlying the interactive process is the duty of the parties
to act in good faith while searching for appropriate reasonable accommodation."
O'Dell v. Department of Public Welfare of Pennsylvania, 346 F.Supp.2d 774, 785
(W.D. Pa. 2004).

An employee establishes that his employer failed to engage in the interactive
process by showing (1) "the employer knew about the employee's disability"; (2)
"the employee requested accommodations or assistance for his or her disability"; (3)

"the employer did not make a good faith effort to assist the employee in seeking accommodations"; and (4) "the employee could have been reasonably accommodated but for the employer's lack of good faith." <u>Taylor v. Phoenixville School District</u>, 184 F.3d 296 (3d Cir. 1999). There is no dispute that the Sheriff knew about Mundt's disability, nor can there be any dispute that he requested an accommodation - specifically additional leave time.

As to the third element, following Mundt's formal request for additional leave time - through and until March 14, 2023 - made on February 8, 2023 and again on February 18, 2023, the Sheriff made no attempt to even provide a formal response to his request or provide an alternative accommodation. Contrary to the District Court's findings, Mundt was not offered temporary reassignment, he was told to resign and that he might be considered for a non-sworn position, a demotion, if he applied for such a position. His requested accommodation was never considered, nor did the Sheriff engage in good faith in the accommodations process. That itself is a violation of the ADAAA.

## <u>CONCLUSION</u>

As set forth herein, the District Court first erred by finding that Mundt was unable to establish a *prima facie* case of disability discrimination. These findings were error, as was the District Court's order granting summary judgment. This Court should thus reverse the order and remand for further proceedings.

Respectfully submitted,

s/ Ashley N. Richardson
Marie A. Mattox
Florida Bar No. 739685
Ashley N. Richardson
Florida Bar No. 42003
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)
ATTORNEYS FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). This brief contains 6903 words.

s/ Ashley N. Richardson
Ashley N. Richardson


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via electronic filing to all attorneys of record, this 26th day of February 2025.

s/ Ashley N. Richardson
Ashley N. Richardson