Case No. 24-14130-D

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**BRANDON MUNDT,**

Appellant,

vs.

**SHERIFF, OKALOOSA COUNTY, FLORIDA,**

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Case No.: 3:24-cv-00082-TKW-ZCB

**APPELLEE'S ANSWER BRIEF**

**ROBERT WAYNE EVANS, ESQ.**
revans@anblaw.com
**BENJAMIN M. LAGOS, ESQ.**
blagos@anblaw.com
**ALLEN NORTON & BLUE, P.A.**
906 North Monroe Street
Tallahassee, FL 32303
Tel: (850) 561-3503

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, the undersigned hereby certifies the following list of individuals and entities are known to me to have an interest in the outcome of this particular case:

1. Allen Norton & Blue, P.A., Counsel for Appellee

2. Ashley N. Richardson, Counsel for Appellant

3. Benjamin M. Lagos, Counsel for the Appellee

4. Brandon Mundt, Appellant

5. Eric Aden, Sheriff of Okaloosa County, Florida, Appellee

6. Honorable T. Kent Wetherell, II, United States District Judge

7. Jim Garrity, Counsel for Appellant

8. Marie A. Mattox, Counsel for Appellant

9. Marie A. Mattox, P.A., Counsel for Appellant

10. Marsha Weaver, General Counsel for Appellee

11. R.W. Evans, Counsel for Appellee

12. The Florida Sheriff's Risk Management Fund

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not believe that oral argument will assist Court's disposition of this case.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES …………………………...………….…….…....……. vi

STATEMENT OF THE ISSUES ……………………………….……………… 1

STATEMENT OF THE CASE ……………………………………….………….... 2

STANDARD OF REVIEW …………………………………...……………….. 14

SUMMARY OF ARGUMENT …………………………….…....….…………. 15

ARGUMENT ……………………………………………...……………..……. 17

I.    The District Court Properly Granted Summary Judgment in the Sheriff's Favor Because Mundt Failed to Establish a *Prima Facie* Case ………………………………………………………………… 17

A. Mundt was not a "qualified individual" …………..………......... 18

B. Mundt's requests for extended leave were not "reasonable" ……. 21

    i. Mundt's requests were indefinite ………………….....….. 22

    ii. Mundt's requests created an undue hardship …………..… 24

C. The Sheriff engaged in the interactive process …………….….… 26

II.    Even if Mundt Established a *Prima Facie* Case of Unlawful Employment Discrimination, he Failed to Rebut the Sheriff's Legitimate and Non-discriminatory Reasons ………..………..…… 28

III.    Conclusion …………………….………….........…………………… 30

iv

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B) …….………… 32

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Damon v. Fleming Supermarkets of Fla., Inc.*,
    196 F.3d 1354 (11th Cir. 1999) ………….…...…………….................…… 14

*Davis v. Columbus Consolidated Gov't*,
    826 F. App'x 890 (11th Cir. 2020) ………….…………….…………… 24

*Davis v. Fla. Power & Light Co.*,
    205 F.3d 1301 (11th Cir. 2000) …………………………….…….….... 17

*Duncan v. North Broward Hosp. Dist.*,
    2024 U.S. Dist. LEXIS 39090 (S.D. Fla. Mar. 5, 2024) ……….…….... 17, 29

*Earl v. Mervyns, Inc.*,
    207 F.3d 1361 (11th Cir. 2000) …………………………….……….. 26

*E.E.O.C. v. Joe's Stone Crabs, Inc.*,
    296 F.3d 1265 (11th Cir. 2002) …………….......…………….................…… 29

*Frazier-White v. Gee*,
    818 F.3d 1249 (11th Cir. 2016) …………………………………. 22, 23

*Groff v. DeJoy*,
    600 U.S. 447 (2023) …………………………………..…………….. 25

*Holland v. Gee*,
    677 F.3d 1047 (11th Cir. 2012) …………….…..…………………..... 15

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 800 (1973) …………………………………….. 28, 29

*Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*,
    573 F.3d 1124 (11th Cir. 2009) …………….……………………… 15

*Parker v. Charter Communs., LLC*,
    2021 U.S. Dist. LEXIS 114922 (M.D. Fla. June 21, 2021) …….…..…….. 24

*Reed v. Heil Co.*,
    206 F.3d 1055 (11th Cir. 2000) ……………………………..……….… 18

*Sims v. MVM, Inc.*,
    704 F.3d 1327, 1332 (11th Cir. 2013) ………………………….…….... 29

*Springer v. Convergys Customer Management Group, Inc.*,
    509 F.3d 1344 (11th Cir. 2007) ……………………………..…...….. 14

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*,
    117 F.3d 1278 (11th Cir. 1997) …………….….………..………… 28

*Todd v. Fayette Cty. Sch. Dist.,*
    998 F.3d 1203 (11th Cir. 2021) …………………….….……………… 14

*U.S. Airways, Inc. v. Barnett*,
    535 U.S. 391 (2002) ………………………………..……………….. 25

*Webb v. Donley*,
    347 F. App'x 443 (11th Cir. 2009) …………………..……….….... 26

*Wood v. Green*,
    323 F.3d 1309 (11th Cir. 2003) ……………………………………… 23, 24

**Constitutional Provisions, Statutes, Orders, & Other Authorities**

29 C.F.R. 825 ……………………………….…………….…..……... 13

42 U.S.C. § 12101 ………………….………….………..……………….....…… 1, 13

42 U.S.C. § 12102(1) …………………….…….…..…………….....…....…… 17

42 U.S.C. § 12111(8) ……………….…………………..……….…....…....…… 17

Rule 56(b), Fed. R. Civ. P. …………………………………………….…..... 14

Art. VIII, Sec. 1(d), Fla. Const. …………………………………………….. 2

Chapter 30, Florida Statutes …………………………………………… 2

Chapter 760, Florida Statutes …………………………………...…………... 13, 15, 29

Section 440.205, Florida Statutes ……………….…………..………………. 13, 15

## <u>STATEMENT OF THE ISSUES</u>

I.     Whether the District Court properly granted summary judgment in Appellee's favor regarding Appellant's claim of unlawful disability discrimination under 42 U.S.C. § 12101, et seq., the Americans with Disabilities Act of 1990, in finding that Appellant failed to establish a *prima facie* case because Appellant was not a "qualified individual"?

II.    Whether the District Court properly granted summary judgment in the Appellee's favor regarding Appellant's claim of unlawful disability discrimination under 42 U.S.C. § 12101, et seq., the Americans with Disabilities Act of 1990, in finding that Appellant failed to establish a *prima facie* case because Appellant failed to request a reasonable accommodation?

III.   Whether, even if Appellant had established a *prima facie* case of unlawful disability discrimination under 42 U.S.C. § 12101, et seq., the Americans with Disabilities Act of 1990, Appellant failed to rebut Appellee's legitimate and non-discriminatory reasons for the alleged adverse employment action?

# STATEMENT OF THE CASE

Appellee, Eric Aden, in his official capacity as Sheriff, Okaloosa County, Florida ("Sheriff" or "Appellee") is an independently elected constitutional officer of the State of Florida. (Article VIII, Sec. 1(d), Fla. Const.; Chapter 30, Florida Statutes). Appellant, Brandon Mundt ("Mundt" or "Appellant") is a former Deputy/Investigator employed by the Okaloosa County Sheriff's Office ("OCSO" or "Sheriff's Office"). (Doc. 15-1, 43:6-13, 54:6-7, 59:12-18, Ex. 9, Ex. 14).[1]

Mundt's employment with the OCSO began in February 2012, as a Patrol Deputy under former Sheriff Larry Ashley ("Ashley"). (Doc. 15-1, 43:6-13, Ex. 9). In May 2015, while traveling to a deposition (Mundt was the deponent), Mundt was in a car accident. (Doc. 15-1, 44:4-14, Ex. 9). Mundt sought treatment from a local emergency room and a First Report of Injury or Illness ("FROI") was completed the same day. (Doc. 15-1, 44:17 – 45:15, Ex. 9). Mundt did not require any continuing treatment and returned to work without any time away. (Doc. 15-1, 46:17-25, 48:5-13).

After Mundt's submission of the FROI, no one from the OCSO commented negatively on the submission nor was there any change in Mundt's patrol duties.

---

[1] Citations to the docket of the United States District Court ("District Court"), Case No. 3:24-cv-00082-TKW-ZCB, shall be identified as "Doc." followed by the District Court docket entry number, followed by a pincite to the page and line number(s) of the docket entry, followed by any referenced exhibits, as applicable.

(Doc. 15-1, 48:21 – 49:23). On June 3, 2015, Plaintiff's treating physician placed him at Maximum Medical Improvement ("MMI"). (Doc. 15-1, Ex. 10).

On June 15, 2016, Mundt resigned from his position with the OCSO. (Doc. 15-1, Ex. 11). His resignation was "in no way due to the agency". (Doc. 15-1, Ex. 11). Rather, resigned in order to move to Michigan due to medical issues involving his family. (Doc. 15-1, Ex. 11). Mundt had no other reason for leaving and he had no medical problems at the time. (Doc. 15-1, 50:17-23).

Mundt and his family returned to Florida in March 2019 and he immediately applied for employment with the OCSO. (Doc. 15-1, 51:3-7, Ex. 12). Mundt was rehired less than one (1) month later by Ashley. (Doc. 15-1, 51:8-12). He returned to patrol duties and his supervisors were Sgt. Depolski ("Depolski") and Lt. Watkins ("Watkins"). (Doc. 15-1, 51:13-21). At no point did Depolski or Watkins (or any other member of the OCSO) comment negatively on Mundt's 2015 workers' compensation claim. (Doc. 15-1, 51:22 – 52:10).

On November 6, 2020, Mundt requested to be transferred from the Central District to the North District of the OCSO. (Doc. 15-1, 53:4-10, Ex. 13). The move was a positive one for Mundt. (Doc. 15-1, 53:11-18). His supervisors in the North District were Sgt. Brown ("Brown") and Lt. Raider ("Raider"). (Doc. 15-1, 53:19-22). Mundt had a good relationship with both supervisors. (Doc. 15-1, 53:23 – 54:5).

In 2021, Mundt applied for a promotion to the Criminal Investigations Division and on June 19, 2021, he was promoted to Investigator and assigned to Homeland Security, (Doc. 15-1, 54:6-7, 59:12-18, Ex. 14). Mundt's supervisors in Homeland Security were Sgt. Joe Gordon ("Gordon"), Lt. John Merchant ("Merchant"), Capt. David Allen ("Allen") and Major Shannon Tait ("Tait"). (Doc. 15-1, 55:25 – 56:25). Mundt and Tait had been friends for many years after meeting while Mundt was a Patrol Deputy and Tait was a sergeant over patrol. (Doc. 15-1, 57:1-19). Up until Mundt's separation from the OCSO (in 2023), their families would spend time together outside of work. (Doc. 15-1, 57:1-19).

On June 1, 2022, Mundt was transferred to General Investigations upon request by Allen. (Doc. 15-1, 57:20 – 58:8, Ex. 15). Mundt did not consider this to be a negative move as he would be exposed to a greater variety of cases. (Doc. 15-1, 58:1-17). Mundt was primarily assigned child crimes cases and was a member of the Special Victims Unit ("SVU"). (Doc. 15-1, 60:9-13).

On June 15, 2022, Mundt submitted to the OCSO a Work Status Report related to "continued back pain", completed by his medical provider, Ashley McGuffin ("McGuffin"), APRN. (Doc. 15-1, Ex. 17). Although the Work Status Report recommended that Mundt return to work on June 15, 2022, the report indicated that Mundt was not physically able to do so. (Doc. 15-1, Ex. 17). According to the report, Mundt was not permitted to balance, bend, carry or climb.

(Doc. 15-1, Ex. 17). More specifically, the Work Status Report reflected that McGuffin responded "No" to the following:

> Does patient have the ability to run after subject on foot, including chasing subjects down hallways or up and down flights of stairs or around the exteriors of buildings or in parking lots on city street, etc.?

> Does patient have the ability to engage in violent and physical confrontations with or without running and chasing the person on foot? This includes physical fighting with individuals who are violent or out of control and wrestling them to the ground?

> Does patient have the ability to physically secure a resisting individual, which includes applying handcuffs or other physical restraining methods to an individual after physically engaging the individual?

> After reviewing these and the other essential functions in the attached job description, in your medical opinion, **can the patient perform the essential functions of a law enforcement officer**?

(Doc. 15-1, Ex. 17) (emphasis added).

Mundt did not provide the OCSO with any additional documentation and he did not submit an FROI for the purpose of seeking workers' compensation benefits. (Doc. 15-1, 70:10-18). Upon submitting the June 15, 2022, Work Status Report to the OCSO Risk Manager, Doris James ("James"), Mundt did not indicate or represent to James that his back pain was the result of a job-related injury. (Doc. 15-4, ¶ 4). After speaking with James, Mundt took no action to pursue a workers' compensation claim. (Doc. 15-1, 71:10-14, 74:13-16).

Mundt also subsequently reviewed General Order ("G.O.") 36.07, Workers'

Compensation and Restricted Duty ("G.O. 36.07"), which states:

> c. **The employee** must email the First Report of Injury to Florida Sheriffs Risk Management Fund at wcclaims@fsrmf.org. In the event an employee is incapacitated or otherwise unable to complete the appropriate report, the employee's immediate supervisor shall ensure the form is completed. A copy of the form shall be immediately forwarded to the agency Legal Unit/Risk Analyst.

(Doc. 15-1, 79:7-10, Ex. 18) (emphasis added). Still, Mundt failed to submit an

FROI form or follow-up regarding submitting one and no medical professional has

ever linked his back pain that arose in 2022 to his 2015 workers' compensation

claim. (Doc. 15-1, 73:10 – 74:12, 79:11 – 82:1).

As Mundt's June 15, 2022, Work Status Report reflected that Mundt was

unable to perform the essential functions of his job, he was placed on leave under

the Family and Medical Leave Act of 1993 ("FMLA"), effective June 15, 2022.

(Doc. 15-1, Ex. 19, 20). Mundt returned to work on July 14, 2022, after being cleared

to perform the essential functions of his job. (Doc. 15-1, Ex. 22, 23). There was no

delay in his return to work and no member of the OCSO commented negatively with

respect to his Mundt's leave. (Doc. 15-1, 88:10-21).

Notably, at this time, Mundt's accrued sick leave balance was low. (Doc. 15-

1, 84:19-24). Accordingly, Sgt. Genrich drafted a memorandum to the Sheriff and

Undersheriff Charlie Nix ("Nix"), requesting that Mundt be provided advance sick

leave to ensure he did not suffer a lapse of income. (Doc. 15-1, Ex. 21; Doc. 12-7, ¶ 8). Nix granted Genrich's request and Mundt was awarded sick leave that he had not yet accrued. (Doc. 15-1, 86:9-11).

Mundt was treated by Dr. Brandon Cook ("Cook") of Orthopaedic Associates in October 2022 for a non-workers' compensation related injury. (Doc. 15-2, 12:3-16, Ex. 3). Mundt's treatment plan as of October 28, 2022, was an L4-5 laminectomy. (Doc. 15-2, Ex. 5). The average recovery time for an L4-5 laminectomy is six (6) weeks, "[a]fter six weeks you can slowly start to return to work." (Doc. 15-2, 27:20-25). On December 1, 2022, Mundt underwent an L4-5 laminectomy, performed by Dr. Cook. (Doc. 15-2, Ex. 9).

On December 6, 2022, Mundt was placed on FMLA leave following his surgery. (Doc. 15-1, Ex. 26; Doc. 15-4, ¶ 9). Due to an infection/complication arising from Mundt's surgery, Mundt was scheduled for a second surgery, a lumbar irrigation debridement, to take place on December 14, 2022. (Doc. 15-2, 40:11-22, 41:8-21, Ex. 10, 11, 12). This surgical complication delayed Mundt's recovery and healing from the initial surgery. (Doc. 15-2, 42:4-18).

On January 5, 2023, Dr. Cook provided Mundt with "a **tentative** return to work date of 3/14/2022[2] **for now**." (Doc. 15-1, Ex. 5) (emphasis added). March 14,

---

[2]Due to a typo, Mundt's medical records reflect 2022 rather than the correct year, 2023. (Doc. 15-2, 50:18-23).

2022, was a later "return date" due to the debridement that Dr. Cook had to perform on Mundt. (Doc. 15-2, 48:10-16).

Following Mundt's second December 2022 surgery, Major Tait interacted with Mundt on Facebook to check on his well-being. (Doc. 15-1, Ex. 28). On January 5, 2023, Tait asked Mundt if he would consider taking a non-sworn (civilian) position as a dispatcher until he was medically cleared to return to work as an Investigator. (Doc. 15-1, Ex. 28). Tait explained to Mundt that "dispatch has positions available and it's a paycheck and accruing leave etc". (Doc. 15-1, Ex. 28). Mundt appreciated the information and admitted that he did not expect the OCSO to hold his spot in investigations for very long, as he knew some needed to fill it. (Doc. 15-1, Ex. 28) ("And I totally don't expect my current spot to be heald [sic] that long **I know someone has to fill it**.") (emphasis added).

On January 12, 2023, Mundt and Tait continued their conversation, as follows:

> **Mundt:** Hey ma'am, Just wanted to say how much I have appreciated everything you have done for me with the dinner, the bandage stuff and the support. It has truly meant allot [sic] to me and Sarah. Thank you again :)
>
> **Tait:** Of course! I hope you are feeling better!
>
> **Mundt:** these last few days have been super rough
>
> **Tait:** Pain?

| **Mundt:** | yeah, a lot |
|---|---|
| **Tait:** | Seems off they can't get that under control |
| **Mundt:** | that's my concern. The pain meds / muscle relaxers they gave me don't touch it. But almost a month after my second surgery I shouldn't be in this much pain in my legs. |

(Doc. 15-1, Ex. 28). On February 7, 2023, Tait again checked on Mundt. (Doc. 15-1, Ex. 28). Mundt advised Tait that he was "not convinced things are better yet" and went on to explain that he "still can hardly do anything and they won't let me start pbysical [sic] therapy until March". (Doc. 15-1, Ex. 28).

On February 8, 2023, James requested Mundt return an updated Work Status Report by Monday, February 13, 2023. (Doc. 15-1, Ex. 29). Mundt returned the Work Status Report completed by his physician that same day which reflected an examination of Mundt on January 5, 2023, but was signed on January 31, 2023. (Doc. 15-1, Ex. 30; Doc. 15-4, ¶ 12). Mundt return to work date was still listed as "3/14/22 **tbd**". (Doc. 15-1, Ex. 30) (emphasis added); (Doc. 15-4, ¶ 12).

As Mundt's FMLA leave had expired on January 28, 2023, Mundt was informed that he needed to submit a memorandum requesting an extension of his leave time. (Doc. 15-1, Ex. 31; Doc. 12-7, ¶ 20). Mundt submitted his request for additional leave on February 8, 2023. (Doc. 15-1, Ex. 32; Doc. 15-4, ¶ 13). Mundt's request did not specify the amount of additional leave he was requesting. (Doc. 15-1, Ex. 32). Notably, Mundt stated in the request for additional leave that the March

14, 2023, return date was "tentative," and he represented that he was "still unable to lift more than 5 pounds or do any strenuous activity." (Doc. 15-1, Ex. 32; Doc. 15-4, ¶ 13).

On February 16, 2023, Mundt was again evaluated by Dr. Cook. (Doc. 15-1, Ex. 4). The tentative status of Mundt's March 14, 2023, return to work remained unchanged. (Doc. 15-1, Ex. 4). However, Dr. Cook also noted that Mundt was "still having quite a bit of leg pain and states his legs give out on him. We will order physical therapy. We will also order updated MRI lumbar spine. See him back in 3 weeks." (Doc. 15-1, Ex. 4).

Mundt was behind schedule at this time in his recovery and was not physically able to return to work. (Doc. 15-2, 56:24 – 57:10). Dr. Cook opined that Mundt was not ready to complete the Physical Abilities Test ("PAT") at this time. (Doc. 15-1, Ex. 4) ("He will have to do a physical abilities test immediately when he returns back to work and I do not think he is ready for this yet.").

At James's, Mundt submitted an update following his February 16, 2023, appointment with Dr. Cook. (Doc. 15-1, Ex. 34). In the letter from James requesting a clarification of the January 31, 2023, work status report, Dr. Cook was asked whether Mundt was able to perform the essential functions of his position, and if not, when he would be able to do so without restriction. (Doc. 15-1, Ex. 34; Doc. 15-4, ¶ 20). Dr. Cook responded, "No, likely 3/14/23." (Doc. 15-1, Ex. 34; Doc. 15-4, ¶ 20).

By "likely", Dr. Cook intended to convey that he was "hoping" Mundt would be able to return to work by March 14, 2023, but he did not know for sure. (Doc. 15-2, 59:19 – 60:3).

As of February 17, 2023, Mundt had exhausted his FMLA leave nearly one (1) month prior and was only able to provide a "tentative" or "likely" return date of March 14, 2023. (Doc. 15-1, Ex. 35; Doc. 15-4, ¶ 20). Accordingly, Tait asked Mundt to make a decision on whether he would accept a non-sworn position or resign and asked that he make this decision by 8:00 AM (CT) on Monday, February 20, 2023. (Doc. 15-1, Ex. 35).

Mundt responded on February 18, 2023, by requesting an extension of leave until March 14, 2023. (Doc. 15-4, ¶ 21; Doc. 12-4, ¶ 7). Due to the uncertainty of his return to work and short- staffing in the SVU, that request was denied by Nix. (Doc. 15-1, Ex. 36; Doc. 15-3, ¶ 4). On Monday, February 20, 2023, Mundt told Tait that he would not accept a non-sworn position or resign. (Doc. 15-1, Ex. 37).

Accordingly, Mundt's employment with the OCSO was terminated, effective February 22, 2023. (Doc. 15-1, Ex. 38). His termination letter informed him that he had "exhausted all available sick and annual leave" and "[i]n accordance with GO 36.10, the failure of any employee to return to work upon the expiration of FML will be treated as a resignation. Regrettably, we must terminate your employment effective today, February 22, 2023." (Doc. 15-1, Ex. 38).

Following his separation from employment with the OCSO, Mundt was seen again by Dr. Cook on March 7, 2023. (Doc. 15-2, Ex. 19). At that time, Mundt was still complaining of "having quite a bit of leg pain and state[d] his legs give out on him." (Doc. 15-2, 60:9 – 61:20, Ex. 19). Mundt was also still not able to complete the PAT at the time. (Doc. 15-2, Ex. 19). Mundt further informed Dr. Cook at this visit that his pain was "worse with activity." (Doc. 15-2, 63:18 – 64:5, Ex. 20). Mundt's post-operative recovery continued to be behind schedule as of March 7, 2023. (Doc. 15-2, 64:6-9).

Mundt was then seen again by Dr. Cook on June 1, 2023. (Doc. 15-2, Ex. 21). During this office visit, Mundt was still complaining about "intermittent leg pain" and stated that his pain had slowly gotten worse. (Doc. 15-2, 65:9 – 66:1, Ex. 21). Mundt was also getting "minimal relief" from his physician directed exercises. (Doc. 15-2, Ex. 21). Accordingly, as late as June 1, 2023, Mundt's post-operative recovery was still behind schedule and he was still unable to complete the PAT. (Doc. 15-2, 67:8-12, Ex. 21).

Mundt's final office visit with Dr. Cook was on September 5, 2023. (Doc. 15-2, Ex. 24). At that time, Mundt was "still having quite a bit of leg pain and state[d] that his legs give out on him." (Doc. 15-2, 69:20 – 70:1, Ex. 24). However, while the visit was not with Dr. Cook, Mundt was also seen by a pain management physician with Orthopaedic Associates (Dr. Cook's practice) on July 5, 2024. (Doc.

15-2, 13:3-14). During this encounter, more than one (1) and a half years after Mundt's surgeries, Mundt informed his physician that his pain was "more or less unchanged from prior to surgery" with Dr. Cook in December 2022. (Doc. 15-2, 13:15-25).

On December 26, 2023, Mundt filed a four-count complaint against the Sheriff alleging that he had been subjected to unlawful disability discrimination (Count I) under 42 U.S.C. §12101 et seq. (the "Americans with Disabilities Act of 1990" or "ADA"), retaliation (Count II) under Chapter 760, Florida Statutes, interference and retaliation (Count III) under 29 C.F.R. 825, the FMLA, and retaliation (Count IV) under Section 440.205, Florida Statutes, Florida's Workers' Compensation Law. (Doc. 1-2). On November 25, 2024, the District Court entered summary judgment in the Sheriff's favor with respect to all four (4) counts. (Doc. 22). Pertinent here, the District Court determined that Mundt was not a "qualified individual" under the ADA, and that Mundt failed to request a reasonable accommodation. (Doc. 22).

## STANDARD OF REVIEW

This Court reviews a District Court's grant of summary judgment *de novo*, applying the same summary judgment standard as the District Court. *Todd v. Fayette Cty. Sch. Dist.,* 998 F.3d 1203, 1214 (11th Cir. 2021) (standard of review affirming summary judgment in favor of employer for disability and FMLA claims); *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007); *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1357 (11th Cir. 1999). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(b), Fed. R. Civ. P. In the instant case, the District Court properly applied the foregoing standard and ruled for the Sheriff on his Motion for Summary Judgment with Incorporated Memorandum of Law.

# SUMMARY OF ARGUMENT

The District Court's entry of summary judgment in favor of the Sheriff should be affirmed. Initially, the Sheriff submits Mundt cannot establish his *prima facie* case for his claim of unlawful disability discrimination under the ADA.[3]

Mundt's disability discrimination claim fails as a matter of law because, as the District Court correctly held, Mundt failed to establish the *prima facie* elements of his claim. Initially, Mundt failed to show that he was a qualified person with a disability at the time of his separation, because he would not have been able to perform the essential functions of his position (even with a reasonable accommodation of extended leave until March 14, 2023). Moreover, Mundt failed to show that he was subjected to unlawful discrimination based on the denial of his request for extended leave until March 14, 2023, because that request would not have enabled Mundt to perform the essential functions of his job.

---

[3] Appellant's Initial Brief does not take issue with or discuss the District Court's grant of summary judgment with respect to Appellant's claims under the Chapter 760, Florida Statutes, the FMLA or Section 440.205, Florida Statutes. Accordingly, Appellant has abandoned and waived those claims and Appellee submits that the merits of such claims should not be addressed by this Court. *See Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) ("The law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.") (alteration and quotation marks omitted); *Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1130 n.7 (11th Cir. 2009) (holding that an argument not made in the initial brief is waived).

Additionally, even assuming Mundt established the *prima facie* elements of his claim, Mundt is unable to rebut the Sheriff legitimate, non-discriminatory and non-retaliatory reasons for his termination. Specifically, that Mundt was terminated because (1) his FMLA leave and accrued leave had been exhausted, (2) his medical providers did not find that he was fit to return to fill duty as of his most recent medical appointment nor could they provide a definitive return to work date, (3) his continued absence was exacerbating the staffing issues in the SVU, and (4) he refused to accept a non-sworn position until he was medically cleared to return to a sworn position.

As such, the District Court correctly granted summary judgment in favor of the Sheriff. Accordingly, the District Court's Order Granting Summary Judgment should be affirmed.

## **ARGUMENT**

**I.**     **The District Court Properly Granted Summary Judgment in the Sheriff's Favor Because Mundt Failed to Establish a *Prime Facie* Case**

Disability discrimination requires a plaintiff establish that he is: (1) disabled; (2) a qualified individual; and (3) subjected to unlawful discrimination because of his disability. *See Duncan v. North Broward Hosp. Dist.*, 2024 U.S. Dist. LEXIS 39090, at *19 (S.D. Fla. Mar. 5, 2024) (citations omitted). To be disabled under the ADA, Mundt must demonstrate that he had (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

A "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Thus, if [Mundt] is unable to perform an essential function of his … job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). The District Court correctly determined that Mundt was not a qualified individual under the ADA and thus, the District Court's Order Granting Summary Judgment should be affirmed.

## A.     Mundt was not a "qualified individual"

The "qualified individual" inquiry under the ADA requires two (2) questions: "First, does the individual satisfy the prerequisites for the position; does the individual have sufficient experience and skills, an adequate education background, or the appropriate licenses for the job? Second, **can the individual perform the essential functions of the job, either with or without accommodations?**" *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000) (emphasis added). Mundt's claim fails on the second prong, as he was unable to perform the essential functions of the job, with or without accommodations, at the time he was separated.

Mundt needed to both (1) receive medical clearance from his treating physician and (2) complete the PAT in order to return to full, unrestricted duty. (Doc. 15-4, ¶¶ 14-16; 12-3, ¶(E)(4)(a)) ("Sworn employees who have not taken or passed the PAT for the current annual cycle and are returning to unrestricted duty (full duty) will contact the Training Coordinator within five business days of being cleared to schedule a PAT date."). Mundt was aware of this requirement and provided Dr. Cook with the requirements of the PAT, before and after his surgeries. (Doc. 15-1, 35:24 – 36:3, 41:12-18). Notably, "it is undisputed that successful completion of the PAT was an essential function of any OCSO sworn position, including the Investigator position that [Mundt] held at the time he was fired." (Doc. 22).

Mundt's medical records never describe the March 14, 2023, return date as anything more than "tentative" or "likely", and he admits that his doctors told him that date was tentative. (Doc. 15-1, Ex. 1, 2, 3, 4, 5, 32). Mundt also conveyed to James on both January 4 and 31, 2023, that his "return date [was] not promising". (Doc. 15-4, ¶ 11, Ex. K and J). Moreover, Mundt admits there is no record supporting his assertion that prior to his separation, he could perform the essential functions of the job:

> Q. Before your release, is there anything before your separation - - can you give me any documentation that tells the sheriff's office you could run, lift and engage in other physical exercise without limitation?
>
> A. No, **which is why they terminated me**.

(Doc. 15-1, 158:20-25) (emphasis added).

Mundt's own statements within his medical records reflect that he was physically unable to complete the essential functions of the job at that time, <u>including the PAT</u>. On February 16, 2023, Mundt told Dr. Cook that he was still having quite a bit of leg pain and that "his legs give out on him." (Doc. 15-2, 56:6-12, Ex. 16). Dr. Cook affirmed that Mundt would not be physically able to return to work at that time. (Doc. 15-2, 57:5-10).

After his employment was terminated effective February 22, 2023, Mundt returned to Dr. Cook on March 7, 2023. (Doc. 15-2, Ex. 19). In this encounter, just

one (1) week prior to Mundt's "tentative" return date, he informed Dr. Cook that he was still dealing with quite a bit of leg pain and that "his legs give out on him." (Doc. 15-2, 61:15-20, Ex. 19).

Accordingly, while Mundt asserts that he would have been a "qualified individual" had he been granted an accommodation of extended leave until March 14, 2023, his medical records speak to the contrary. Mundt's June 1, 2023, medical records (nearly three (3) months after his "tentative" return date) reflect that he was still having intermittent leg pain and receiving "minimal relief" from his physician-directed exercises. (Doc. 15-2, 64:23 – 66:1, Ex. 21). Mundt also informed Dr. Cook at that time that he had gone to a few physical therapy appointments, but "this made things worse." (Doc. 15-2, Ex. 22).

As late as six (6) months after his "tentative" return date of March 14, 2023, during his September 5, 2023, encounter, Mundt reiterated that "his legs give out on him." (Doc. 15-2, 69:20 – 70:1, Ex. 24). Finally, when he was seen by a pain management physician on July 5, 2024, Mundt stated that "[t]he pain is more or less unchanged from prior to surgery." (Doc. 15-2, 13:18-25). Accordingly, the District Court correctly determined that "[Mundt's] testimony that '[o]n March 7, 2023, Cali Wilson saw me and cleared me to return to work without restrictions,' is directly refuted by Ms. Wilson's medical note from that appointment" and the medical records of Mundt's subsequent encounters with his physicians. (Doc. 22).

Mundt failed to show that he was able to complete the PAT at the time of his separation, which is indisputably an essential function of his job as a Deputy Sheriff/Investigator. Thus, the District Court correctly determined that Mundt was not a "qualified individual" under the ADA at the time of his separation and Mundt is unable to establish the *prima facie* elements of his claim. Accordingly, the District Court's Order Granting Summary Judgment should be affirmed.

### B.     Mundt's requests for extended leave were not "reasonable"

The District Court correctly determined that despite Mundt's contrary assertions, he was not subjected to unlawful discrimination based on the denial of his request for extended leave. (Doc. 22). Mundt contends that he made three (3) requests for reasonable accommodations. (Doc. 15-1, Ex. 39). He claims he (1) made a request in November 2022 prior to his December surgeries, (2) made a request in January 2023 via email to Genrich, and (3) made a request on or around February 20, 2023, to remain on leave until March 14, 2023. (Doc. 15-1, Ex. 39).

Mundt admits that the first request in November 2022 was approved without issue, and Plaintiff's second request was made on February 8, 2023, and not in January 2023. (Doc. 15-1, Ex. 32, 39). The second request stated the following:

> I am writing this request for the ability to receive permission to take more leave as I am currently still on Disability and have a current return to work date of March 14, 2023.

I started this leave on December 01, 2022 and have had two spine surgeries in December. I have been recovering since and **I am still unable to lift more than 5 pounds or do any strenuous activity**.

**The Doctors have told me the March 14, 2023 is tentative** pending what they believe is right for me to be signed off on as they are familiar with the PAT course requirements for us.

I would greatly appreciate any assistant I could get in this matter and I apologize for any inconvenience it has caused.

(Doc. 15-1, Ex. 32) (emphasis added). Mundt's third request came via email on February 18, 2024, when he requested an extension of his leave until his tentative return date of March 14, 2023. (Doc. 15-1, Ex. 36). The second and third requests for accommodation were unreasonable as each were indefinite extension requests that would have created an undue hardship upon the OCSO.

     *i.   Mundt's requests were indefinite.*

A plain reading of Mundt's second request reflects that it was for indefinite time off, as Mundt failed to state the amount of time he was requesting and merely requested "more leave." (Doc. 15-1, Ex. 32). Accordingly, Mundt's request is comparable to the indefinite extension request made in *Frazier-White v. Gee*, 818 F.3d 1249 (11th Cir. 2016).

In *Gee*, the employee "requested 'an extension to continue to receive care' so that she could 'get better and return to full duty 100%.'" 818 F.3d at 1256. Noting

that the employee "did not suggest a time frame for when she would be able to resume her full-duty position", the Eleventh Circuit affirmed the lower court's finding that the employee's "request for an indefinite extension… was unreasonable as a matter of law." *Gee*, 818 F.3d at 1256 (citing *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) ("The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future."). Accordingly, Mundt's second request was unreasonable as the request fails include any suggestion of a time frame for when he would be able to return to work. (Doc. 15-1, Ex. 32).

Mundt's third request was also for an indefinite extension. Mundt never received a definitive return to work date from Dr. Cook and was only able to provide a "tentative", "tbd," or at best, "likely" return to work date. (Doc. 15-1, Ex. 4, 5, 30, 34). Despite asserting that "it was always stated that I would return March 14th", Mundt admits in his February 8, 2023, request for indefinite extension of leave that "the Doctors have told me the March 14, 2023 is **tentative**…" (Doc. 15-1, 27:3 – 28:17, Ex. 32).

In *Green*, the Eleventh Circuit addressed an indefinite leave request. 323 F.3d at 1314 ("Wood was requesting an indefinite leave of absence."). The Eleventh Circuit noted that "Wood might return to work within a month or two, or he could be stricken with another cluster headache soon after his return and require another indefinite leave of absence. Wood was not requesting an accommodation that

allowed him to continue to work in the present, but rather, in the future – at some indefinite time." *Id*.

The issue in *Green* presents itself again here. Despite his contrary assertions, neither Mundt nor his medical providers were ever able to provide the OCSO with a definite return to work date. Accordingly, the District Court correctly determined that Mundt's requested accommodations for extensions of time were indefinite and therefore unreasonable.

### ii. *Mundt's requests created an undue hardship.*[4]

Mundt's accommodation requests of extended time away would have resulted in an undue hardship for the OCSO. The undue hardship inquiry focuses on whether an accommodation is unreasonable because of its impact on business operations, as

---

[4] Notably, because the District Court concluded that Mundt failed to establish a *prima facie* case under the ADA, the District Court did not consider the Sheriff's undue hardship argument. (Doc. 22, p. 15, n. 6). Though, the District Court did note its agreement with the Sheriff's argument and acknowledged that "extending [Mundt's] to March 14 (or beyond) would have caused an undue hardship to the SVU because that unit was already short-staffed and the investigators' higher-than-usual caseloads was impacting the timelines and completion of the unit's cases." (Doc. 22, p. 15, n. 6) (citing *Davis v. Columbus Consolidated Gov't*, 826 F. App'x 890, 893 (11th Cir. 2020) (finding no error in district court's conclusion that plaintiff's accommodation would cause an undue hardship based on the impact of the requested accommodation of nine weeks of medical leave on the remaining bus operators that would have to cover Plaintiff's bus routes); *Parker v. Charter Communs., LLC*, 2021 U.S. Dist. LEXIS 114922, at *35 (M.D. Fla. June 21, 2021) ("When an accommodation of medical leave would result in other employees having to work longer or harder, such may show that the requested accommodation creates an undue hardship for the employer.").

opposed to the plaintiff or other employees. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400-01 (2002). Undue hardship is shown when a burden is substantial in the overall context of an employer's business. *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). This test must be applied in a manner that considers "all relevant factors" at hand, including the particular accommodations at issue and their practical impact on the employer's business. *Id*. at 470.

Holding Mundt's position open indefinitely would have exacerbated staffing and caseload of the investigators in the SVU. (Doc. 12-7; Doc. 12-4, ¶ 8). Mundt was aware of this, admitting to Tait as early as January 5, 2023, that he did not expect his position to be held open long. (Doc. 12-1, Ex. 28). Crimes against children are high priority investigations and the SVU was already missing one investigator, Brandon Walters ("Walters"), who was on medical leave due to an injury he sustained while Mundt was on leave. (Doc. 12-7, ¶ 16; Doc. 12-4, ¶ 8). Investigators are also regularly absent from the job due to required continuing training and approved leave. (Doc. 12-7, ¶ 15).

Mundt's cases were reassigned while he was on leave and any new cases were assigned to other investigators. (Doc. 12-7, ¶ 12). Adding to the caseload of the remaining investigators would have prolonged investigations and negatively affected the efficiency of the unit. (Doc. 12-7, ¶ 18; Doc. 12-4, ¶ 8). Reassigning investigators from other units to pick up Mundt's cases during his extended leave

would not suffice because Investigators in other units were not as qualified to conduct crimes against children investigations. (Doc. 12-7, ¶ 17). Furthermore, reassigning these investigators would have simply created staffing issues in the other investigations units, thereby "robbing Peter to pay Paul." (Doc. 12-4, ¶ 8).

Thus, Mundt's requests for extended leave were unreasonable as the requests would have adversely affected the operations of the SVU, amounting to undue hardship. The OCSO was not required to accommodate Mundt's unreasonable requests.

### C. The Sheriff engaged in the interactive process

The District Court correctly held that it was not necessary for the Sheriff to engage in the interactive process with Mundt because Mundt failed to request a reasonable accommodation. (Doc. 22); *See Webb v. Donley*, 347 F. App'x 443, 446 (11th Cir. 2009) ("if the employee does not identify a reasonable accommodation, the employer does not have to enter into an interactive dialogue or show undue hardship") (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 137 (11th Cir. 2000)). Regardless, despite Mundt's contrary assertions, the District Court still determined that the Sheriff did engage in the interactive process by repeatedly offering Mundt the a non-sworn position as a dispatcher until he would be physically able to complete the PAT. (Doc. 22).

On appeal, Mundt claims that the District Court "misstates the facts… as Mundt was only offered the chance to apply for a non-sworn position." (Initial Brief, p. 23). But its Mundt who misstates this fact.

The conversation between Mundt and Tait in January 2023 was as follows:

| | |
|---|---|
| **Tait:** | Have you thought about going to dispatch for not to keep a paycheck coming and then when clear from doc can come back? |
| **Tait:** | This is your friend talking not your boss |
| **Mundt:** | How would that work |
| **Tait:** | Are you ok to sit? Work at a desk type situation? |
| **Mundt:** | Sometimes… I have to keep my activity increasing and walking to try and get the strength back |
| **Tait:** | Not like you couldn't walk as needed in dispatch, go to the bathroom, walk before or after work |
| **Mundt:** | I'll talk to Sarah. Would that be me resigning from my current position? |
| **Tait:** | Yes – you would have to go to non sworn. It's just a suggestion. If you get to your 180 days that's what's going to be offered too (opportunity to take a non sworn position).<br><br>I know you are doing short term disability and not sure how long that lasts? |
| **Tait:** | Talk to Sarah about it and discuss finances. I know it's not ideal but, dispatch has positions |

> available and it's a paycheck and accruing
> leave etc

(Doc. 15-1, Ex. 28). Later that same day, Tait told Mundt that she "did talk to the undersheriff about your present situation… **He said he would absolutely support that in hopes that you would be cleared to come back sworn**. I just wanted you to know that **you've got our support**. (Doc. 15-1, Ex. 28) (emphasis added). On February 17, 2023, Tait again informed Mundt, "we would be more than happy to extend a non-sworn position in hopes that one you are cleared can come back to Deputy Sheriff status." (Doc. 15-1, Ex. 35).

It is well established that an employee is merely entitled to a reasonable accommodation, not the employee's preferred accommodation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). Despite Mundt's attempt to rewrite the facts of this case and portray the dispatcher position as one which he would need to "apply for", the record demonstrates that Mundt was informed early and often that he would be supported by the Sheriff if he chose to accept a non-sworn position and return to work. Accordingly, the District Court's Order Granting Summary Judgment should be affirmed.

## II. Even if Mundt Established a Prima Facie Case of Unlawful Employment Discrimination, he Failed to Rebut the Sheriff's Legitimate and Non-Discriminatory Reasons

Absent direct evidence of discrimination, courts apply the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* to ADA

discrimination claims. *See Duncan*, 2024 U.S. Dist. LEXIS 39090, at *16 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)). Under this framework, Mundt must first establish a *prima facie* case of discrimination, before the Sheriff is required to articulate a legitimate, non-discriminatory reason for the challenged employment action. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013).

"If the [Sheriff] articulates one or more such reasons, [Mundt] is afforded an opportunity to show that the [Sheriff's] stated reason is a pretext for discrimination." *Sims,* 704 F.3d at 1332. Throughout this entire process, "the ultimate burden of persuasion remains on [Mundt]." *Id*. at 1333; *see also E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002). An employer's initial burden is a low bar to hurdle and the "burden placed on the employer is only an evidentiary one: a burden of production that can involve no credibility assessment." *Duncan*, 2024 U.S. Dist. LEXIS 39090, at *16 (internal quotations omitted).

Because the District Court correctly determined that Mundt had failed to establish a *prima facie* claim under the ADA, it did not directly undertake the *McDonnell Douglas* burden-shifting analysis under the ADA. However, the District Court did correctly determine, when analyzing Mundt's claim of retaliation under Chapter 760, Florida Statutes, that Mundt offered no evidence that would rebut the Sheriff's legitimate and non-discriminatory reasons for his termination. (Doc. 22).

The "[Sheriff] proffered (and the undisputed evidence establishes) that [Mundt] was terminated because (1) his FMLA eave and accrued leave had been exhausted, (2) his medical providers did not find that he was fit to return to full duty as of his most recent medical appointment nor could they provide a definitive return to work date, (3) his continued absence was exacerbating the staffing issue in the SVU, and (4) he refused to accept a non-sworn position until he was medically cleared to return to a sworn position." (Doc. 22). Moreover, it is undisputed that the SVU was short-staffed and Mundt's cases were being transferred to other investigators, that James repeatedly requested additional information from Mundt's medical providers – never receiving a clear and explicit direction to return Mundt to work, and that the Sheriff consistently adhered to applicable OCSO policies and provided Mundt with options under those policies. (Doc. 12-7; Doc. 15-4).

Accordingly, the record in this matter is devoid of evidence in support of Mundt's assertions that the Sheriff's legitimate and non-discriminatory reasons for Mundt's termination are pretextual. Thus, the District Court's Order Granting Summary Judgment should be affirmed.

## III.    Conclusion

The District Court's Order granting summary judgment should be affirmed. Contrary to Mundt's arguments, he failed to establish his *prima facie* case. Moreover, even if he had established his *prima facie* case, the Sheriff articulated

legitimate and non-discriminatory reasons for Mundt's termination and Mundt failed to rebut the Sheriff's legitimate and non-discriminatory reasons with a triable issue.

For these reasons, the Sheriff respectfully requests that this Court affirm the District Court's Order Granting Summary Judgment in his favor.

Respectfully submitted,

*/s/ Benjamin M. Lagos*
**Robert W. Evans, Esq.**
Florida Bar No. 0198862
revans@anblaw.com
**Benjamin M. Lagos, Esq.**
Florida Bar No. 1025146
blagos@anblaw.com
**ALLEN NORTON & BLUE, P.A.**
906 North Monroe Street
Tallahassee, Florida 32303
Telephone: 850-561-3503
Facsimile: 850-561-0332

## CERTIFICATE OF COMPIANCE WITH RULE 32(a)(7)(B)

I HEREBY CERTIFY that this brief, which utilizes a proportionally-spaced typeface, complies with the type-volume limitations of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure as Microsoft Word calculates that it contains 7,089 words, excluding the parts of the brief exempted by Rule 32(f).

*/s/ Benjamin M. Lagos*
Attorney

## CERTFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all Counsel of Record.

*/s/ Benjamin M. Lagos*
Attorney